**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **K.J.C., by and through her,** | § | |
| **Guardian and Next Friend,** | § | |
| **ANN PETTAWAY,** | § | |
| | § | |
| **Plaintiff,** | § | **CASE NUMBER: 2:17-CV-91-WKW** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **CITY OF MONTGOMERY, et al.** | § | |
| | § | |
| **Defendants.** | § | |

**BRIEF AND MEMORANDUM OF LAW SUPPORTING DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

COME NOW, Defendants City of Montgomery ("City"), Chief Ernest N. Finley, Jr. ("Chief Finley" or "Finley") and Captain W.B. Gaskin ("Capt. Gaskin" or "Gaskin"), by and through undersigned counsel, and in support of the Motion for Summary Judgment, filed contemporaneously herewith, say as follows:

**SUMMARY JUDGMENT STANDARD**

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact....' Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)). The Court must view the evidence produced by "the nonmoving party, and all factual inferences arising from it, in the light most favorable to" that party. Barfield v. Brierton, 883 F.2d 923, 934 (11th Cir.1989).

However, Rule 56(e) states that: "an adverse party [to a motion for summary judgment] may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."   Fed.R.Civ.P. 56(e); see also Celotex, 477 U.S. at 325-27.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact."  Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 586 (1986).   The non-moving party must "go beyond the pleadings" and submit sufficiently adequate admissible evidence demonstrating "specific facts that there is a geninue [dispute] for trial."  Celotex, 477 U.S. at 324 (internal quotes omitted). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.... If the evidence is merely colorable, ... or is not significantly probative, ... summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (internal citations omitted).  Indeed, "[s]ummary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'"  Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11th Cir .2007) (citations omitted).

## **PROCEDURAL HISTORY**

This lawsuit was originally filed on or about February 16, 2017, and the amended complaint (doc. 15) was filed on or about April 3, 2017, against Morris Leon Williams, Jr., the

City of Montgomery, Chief Ernest Finley, and Captain W.B. Gaskin.[1]  Counts I, II and III of Plaintiff's amended complaint bring claims under 42 U.S.C. § 1983.  More specifically Count I asserts violations of the Fourth Amendment of the United States Constitution against each defendant.  Count II asserts violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.  Count III alleges a violation of the Equal Protection Clause of the Fourteenth Amendment.  Count IV of Plaintiff's amended complaint alleges a state law cause of action for assault and battery against Defendant Williams.  Count V of Plaintiff's amended complaint alleges a state law cause of action for invasion of privacy against Defendant Williams.  Count VI of Plaintiff's amended complaint alleges a state law cause of action for intentional infliction of emotional distress/outrage against Defendant Williams.  Count VII of Plaintiff's amended complaint alleged supervisory and municipal liability against the City.

Defendants City, Chief Finley and Capt. Gaskin moved to dismiss all counts against them.  Ultimately the District Court Judge granted the motion in part and denied the motion in part on February 27, 2018.  More specifically, to the extent that they alleged claims against the City, Chief Finley or Capt. Gaskin, Counts II and III were dismissed against those Defendants; Count VII was dismissed; and all claims against Chief Finley and Capt. Gaskin in their official capacity were dismissed as duplicative of the claims against the City.  (Doc. 30).  As such, it appears that the only remaining claim against the City, Chief Finley and/or Capt. Gaskin is Count I asserting a Fourth Amendment violation against the City, Chief Finley in his individual capacity and Capt. Gaskin in his individual capacity.

---

[1] Defendant Morris Williams did not act within the line and scope of his official duties; he also violated Montgomery Police Department and City Policy.  Therefore, as discussed in Doc. 17, p. 14-15, the City is not representing Defendant Morris Williams or indemnifying him.

On March 22, 2018, Defendants City, Chief Finley and Capt. Gaskin filed an answer to Plaintiff's Amended Complaint denying all material allegations and asserting affirmative defenses. (Doc. 31).

## STATEMENT OF THE FACTS

Plaintiff, in her amended complaint, asserts the following: On March 28, 2016, K.J.C. telephoned emergency-911 to report a missing medical device; Montgomery Police Officer Morris Williams responded to Plaintiff's residence in response to the call. (Doc. 15, para. 18-19). K.J.C. claims that during the encounter Williams entered her residence without permission, asked her questions about her sexual relations with her husband; instructed her to remove her clothing; pushed her over the bed and forcibly raped and sodomized her. (Doc. 15, para. 23-28). After her husband returned from work later that day, K.J.C. told him she had been raped and they went to Baptist Hospital. (Doc. 15, para. 30). Plaintiff avers that medical personnel at Baptist Hospital and also at the One Place Family Justice Center determined that she had been sexually assaulted, sodomized and suffered trauma to her anal area. (Doc. 15, para. 31). Officer Williams was questioned by police and told them that he and K.J.C. had engaged in consensual vaginal intercourse. (Doc. 15, para. 33).

On March 29, 2016, the day after the incident, Williams was relieved of duty and placed on administrative leave pending the outcome of the criminal charges and internal disciplinary proceedings. (Ex. A, Excerpts of Williams' Personnel file, D000337 – D000340). That same day Det. S.B. Edwards presented an affidavit seeking a warrant against Williams to charge him in state court with the felony criminal offense of sodomy in the second degree. (Ex. B, Excerpts of City Investigations File, at Bates D000784 – D000787). Also that same day, Chief Finley

requested that City Investigations open an investigation into the matter.  (Ex. B, at Bates D000773).  The results of that investigation substantiated that Williams violated the City of Montgomery's Employee Handbook Policy regarding Workplace Rules of Conduct in that Williams had been arrested for a criminal offense.  (Ex. B, at Bates D000752 – D000755).

On June 1, 2018, an assistant district attorney notified MPD Chief of Operations John Bowman that the criminal case had been no-billed by the grand jury, and Chief Bowman sent a memorandum to City Investigations requesting that City Investigations conduct "a thorough investigation in Officer Williams' actions to determine if any policies were violated."  (Ex. B, at Bates D000817).  City Investigations opened an investigation that same day.  (Ex. B, at Bates D000818 – D000820).  On June 5, 2018, City Investigations rendered its investigative summary substantiating the allegations that Williams' actions in the March 28, 2016, incident violated Article I, Section 1.403 (Conduct Unbecoming an Officer) and Article II, Section 2.102 (Duties of Responsible Employment, Engaging in any activity which may reflect negatively on the integrity, competency, or ability of the individual to perform his duty, or may reflect negatively on the reputation of the Department).  (Ex. B, at Bates D000815 – D000816).  On June 13, 2018, Williams tended his letter of resignation from MPD effective June 22, 2018, before termination proceedings could be completed.

The on-call supervisor for the Criminal Investigations Division ("CID"), Sgt. R.D. Bridges, received a call advising that a female (plaintiff K.J.C.) was at Baptist Hospital reporting that she had been raped by Williams while he was on duty.  Sgt. Bridges dispatched Det. S.B. Edwards – the on-call detective for CID – to the hospital to make contact with K.J.C.  (Ex. B, at Bates D000801).

Det. Edwards made contact with K.J.C. and K.J.C.'s husband at Baptist Hospital.[2]  K.J.C. told Det. Edwards that the clothing she had been wearing at the time of the incident was at her residence and that officers could enter the residence to retrieve the clothing – Det. Edwards sent an officer to retrieve said clothing using a door key provided to her by K.J.C. and her husband.[3] After K.J.C. was discharged from the hospital, Det. Edwards transported them to the One Place Family Justice Center.  At One Place K.J.C. explained that she had telephoned the police because she was unable to find her medical monitor and although her husband was present when Officer Williams arrived at their residence he left for work while Williams was still there.  K.J.C. further stated that after her husband left, Williams entered the residence without her permission, began asking her questions that were sexual in nature and that he removed articles of his clothing and ordered her to lift up her dress.  According to K.J.C., Williams then removed his pants, leaned her over the bed, and penetrated her anus with his penis.  She stated that after he was finished he dressed and repeatedly told her not to tell anyone what had happened.  And that as a result of the nonconsensual sexual assault K.J.C. went to the hospital after her husband returned home from work.  (Ex. B, at Bates D000806 – D000808).

On March 29, 2016, Sgt. Bridges located Williams in the parking lot of the Montgomery Police Department ("MPD") when Williams was reporting for roll call.  Williams was relieved of his police duty belt and firearm and Sgt. Bridges transported Williams to CID for questioning. Det. Edwards and Det. Moore questioned Williams.  (Ex. B, at Bates D000801).

According to Det. Moore and Det. Edwards, Williams acknowledged that he had engaged in what he characterized as consensual sexual intercourse with K.J.C. when he was at K.J.C.'s

---

[2]Sgt. M.A. Wells was the first officer to arrive at Baptist Hospital and speak with K.J.C.  His rendition of her statements to him substantially mirrors those as recited by Det. Edwards and set out herein.

[3] Det. B.S. Reed went to K.J.C.'s residence to recover said evidence.  Sgt. Wells also indicated that he accompanied Det. Reed to retrieve the evidence.

residence. (Ex. B, at Bates D000804; D000809). Sgt. Bridges and Det. Edwards then secured and executed a search warrant to collect bodily fluids from Williams; they also secured and executed a search warrant to collect several articles of Williams' clothing, including MPD uniforms, shirts, and underwear. (Ex. B, at Bates D000801 – D000802; D000809-D000810).

On September 27, 2016, Williams gave an interview to City Investigations wherein he again acknowledged that he had responded to K.J.C.'s residence. He also indicated that he had engaged in sexual intercourse with K.J.C., though he again contended it was consensual. Williams acknowledged to City Investigations that he had also previously given a statement to Det. Edwards and Det. Moore the day after the incident wherein he told them he had had consensual intercourse with K.J.C. (Ex. B, at Bates D000811 – D000814).

"Police applicants are required to undergo a series of examinations and must pass a rigorous background examination before they can be considered for employment." (Doc. 15, paragraph 12). In addition to fundamentals such as being taught the criminal laws of the State of Alabama, the Montgomery Police Academy curriculum for Williams' training class included sessions on Stress Management and Handling the Emotionally Disturbed taught by personnel from Montgomery Area Mental Health Association, Title VII/Sexual Harassment by the Montgomery City-County Personnel Board, and Rape Awareness taught by personnel from Standing Together Against Rape. (Ex. C, at Bates D000597 – D000599). Furthermore, Williams was provided with copies of MPD's Rules and Regulations, including Article I, Section 1.704 pertaining to Sexual Harassment Policy and Statement and also viewed a sexual harassment training video. (Ex. C, Excerpts from Williams' training file, at Bates D000456-D000457).

## **ARGUMENT**

Municipal liability for claims of constitutional violations is limited.  Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed. 2d 492 (1961) held Congress did not intend to bring municipal corporations within the reach of 42 U.S.C. § 1983 because a municipality was not a "person" within the statute's meaning. Ibid. at 191. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed. 2d 611 (1978) created an exception under the immunity provided in Monroe that allowed for suits against municipalities under 42 U.S.C § 1983 if it can be shown a municipality "executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" that is unconstitutional as well as a "governmental custom" which may not be an official policy but is executed in practice. Ibid. 690-691. But Monell expressly upheld municipal immunity when a 1983 claim sought to hold a city liable for an employee's constitutional tort through the doctrine of respondeat superior. Ibid. at 663 (see footnote 7 saying, "we do uphold Monroe v. Pape insofar as it holds that the doctrine of respondeat superior is not a basis for rendering municipalities liable under § 1983 for the constitutional torts of their employees" (emphasis added)).  See also Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015).

A plaintiff has a "high burden" to hold a City liable for depravation of constitutional rights brought under 42 U.S.C. § 1983. Owaki v. City of Miami, 491 F.Supp. 2d 1140, 1158 (S.D. Fla. 2007). For a City to be held liable under a claim of constitutional violations brought under § 1983, the complainant must identify a policy or custom that caused the plaintiff's injury. Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999) (citing Board of County Comm'rs v. Brown, 520 U.S. 397, 403, 117 S.Ct. 1392, 1388, 137 L.Ed. 2d 626 (1997).).  A policy is "a decision that is officially adopted by the municipality or created by an official of such rank that he or she could be said to be acting on behalf of the municipality."  Brown v. City of Fort

Lauderdale, 923 F.2d 1474, 1479-80 (11th Cir. 1991).  A "custom" is a practice that is so settled and permanent that it takes on the force of law.   Monell, at 690-91.  "It is only when the 'execution of the government's policy or custom…inflicts the injury' that the municipality may be held liable."  McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004) (quoting City of Canton v. Harris, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed. 2d 412 (1989)).   In order to establish liability against a municipality based on a custom, "it is generally necessary to show a persistent and widespread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the municipality. Normally, random acts of isolated incidents are insufficient...."   Church v. City of Huntsville, 30 F. 3d 1332, 1345 (11th Cir. 1994).  "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." Ibid. The purpose for requiring the plaintiff to identify a custom or policy that a municipality is alleged to have violated is it "ensure[s] that [the city] is held liable for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Ibid. at 1290.  See also McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004).  Plaintiff has not shown any custom or policy of the City under any of the claims under 42 U.S.C. § 1983 that caused a civil rights violation. Plaintiff has not submitted that any final policymaker of the City acted with an unconstitutional motive.   Merely using the words "policy" or "custom" or "unconstitutional" in the allegation is not sufficient to state a claim under 42 U.S.C. § 1983.  See Monell v. Dept. of Social Services, 436 U.S. 658 (1978).

    "To show an unconstitutional policy or custom, Plaintiff must identify the policy or

custom, connect the policy or custom with the government entity itself, and show that the particular injury was incurred because of the execution of that policy." Bennett v. City of Slidell, 782 F.2d 762, 767 (5th Cir. 1984). It is well established that a local government agency or its officials "may only be liable under [42 U.S.C.] § 1983 if an action pursuant to official policy of some nature caused a constitutional tort." Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) (quoted in Dowdell v Chapman, 930 F.Supp. 533, 545 (M.D. Ala. 1996) where the court held a causal link must be established between official policy and custom and plaintiff's injury). Plaintiff has failed to allege or identify any such official policy or custom in the instant case.

Defendants recognize that inadequate training may, in limited circumstances, give rise to a § 1983 claim. Since a municipality rarely will have an express written or oral policy of inadequately training or supervising its employees, the Supreme Court has further explained that a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a "deliberate indifference" to the rights of its inhabitants, as follows:

> "We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition ... that a municipality can be liable under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.' Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.... '[M]unicipal liability under § 1983 attaches where-and only where-
> a deliberate choice to follow a course of action is made from among various alternatives' by city policymakers. Only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality-a 'policy' as defined by our prior cases-can a city be liable for such a failure under § 1983."

City of Canton, 489 U.S. at 388-89, 109 S.Ct. 1197 (internal citations omitted). Additionally,

> "If a program does not prevent constitutional violations, municipal

> decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for their action – the "deliberate indifference" – necessary to trigger municipal liability.  [Canton] at 390, n. 10. ('It could ... be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need'); id., at 397 (O'CONNOR, J., concurring in part and dissenting in part) ('Municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in,  a pattern of constitutional violations . . .'). In addition, the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training, rather than a one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident, is the 'moving force' behind the plaintiff's injury. See id., at 390-391."

Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 407-08, 117 S. Ct. 1382, 1390 (1997). Similarly, a supervisory official may be held liable "where the defendant personally participates in the unconstitutional conduct or there is a causal connection between such conduct and the defendant's actions." Harper v. Lawrence County, 592 F. 3d 1227, 1236 (11th Cir. 2010).

However, a plaintiff seeking to prevail under this theory must first prove a direct causal link between the policy and the inadequacy likely to result in the violation of constitutional rights so "that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." Riley v. Newton, 94 F. 3d 632, 638 (11th Cit. 1996) (citing City of Canton v. Harris, 489 U.S. at 390).  To establish a "deliberate or conscious choice" or such "deliberate indifference," a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action. See Board of County Com'rs v. Brown, 520 U.S. 397, 398 (1997); Young v. City of Augusta, Georgia, 59 F.3d 1160, 1171-72 (11th Cir.1995); Church v. City of Huntsville, 30 F.3d 1332, 1342-46 (11th Cir.1994); Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir.1990); Kerr v. City of West Palm Beach, 875 F.2d 1546, 1556-57 (11th Cir.1989).  The Eleventh Circuit

has repeatedly held that without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise. See, e.g., Wright v. Sheppard, 919 F.2d 665 (11th Cir.1990). In Wright v. Sheppard, the Eleventh Circuit held that a sheriff's department was not liable for a deputy's acts when "no evidence of a history of widespread prior abuse ... put the sheriff on notice of the need for improved training or supervision." Id. at 674.  Indeed, in Church v. City of Huntsville, 30 F.3d 1332 (11th Cir.1994), the Eleventh Circuit reversed a district court's preliminary injunction against the City of Huntsville, holding that the plaintiffs were not likely to succeed on the merits of their failure-to-train claim without proof that the City was aware of a prior incident in which constitutional rights were similarly violated. Id. at 1342-46; see also Popham v. City of Talladega, 908 F.2d 1561, 1564-65 (11th Cir.1990) (finding no liability for failure to train when no pattern of incidents put the City on notice of a need to train).  More importantly, in Brooks v. Scheib, 813 F.2d 1191 (11th Cir.1987), even though there had been ten prior citizen complaints about Officer Scheib, the Eleventh Circuit held that the City did not have any notice of past police misconduct because the plaintiff "never demonstrated that past complaints of police misconduct had any merit." Id. at 1193. The Eleventh Circuit noted that "the number of complaints bears no relation to their validity." Id.

Here, Plaintiff has not established the requisite facts or evidence to show the causal connection evidencing any sort of deliberate indifference by these Defendants.  In her amended complaint, Plaintiff identified what she contends are twenty-one incidents where "other MPD officers were criminally charged for unlawful acts committed against members of the community while on duty."  (Amended Complaint at paragraph 34).  However, merely alleging that there have been "complaints" about separate incidents does not provide any indicia as to whether those

"complaints" were founded or meritorious.  Indeed, in many professions, particularly those involving exposure to members of the general public in potentially confrontational situations, unfounded complaints occur routinely.  But the Plaintiff must present more evidence than just the conclusory allegation that it must have been negligent hiring and/or inadequate training and supervision because there have been a handful of complaints lodged against officers in the past. In the present case, not only is Plaintiff unable to establish that there have been any complaints of merit, she has not even alleged there were any complaints at all filed against the officers named as defendants in the present case.  She has not identified, nor can she identify, any specific deficiency in the City's training program that is related to the alleged wrongful conduct of Williams.  She has not established evidence of any widespread abuse that placed these Defendants on notice of a deficiency in the training program or a need to take corrective action, nor that the Defendants had any custom or policy that resulted in deliberate indifference to Plaintiff's (or any other citizen's) constitutional rights.  Accordingly, based on case law and the facts of this case, neither the City, nor Chief Finley, nor Capt. Gaskin can be held liable under 42 U.S.C. § 1983.  These Defendants are due to be granted summary judgment and the case against them dismissed.

Furthermore, intentional sexual misconduct by a police officer cannot be caused by a custom or policy of a city or a city's failure to train or supervise, as any police officer would know that in any instance sexual misconduct is wrong, against the law, and in violation of all terms of his or her employment.  See e.g., Sewell v. Town of Lake Hamilton, 117 F. 3d 488 (11th Cir. 1997). In Sewell, an arrestee sued the Town of Lake Hamilton under § 1983 after she was molested by a police officer. Id. at 489.  The police officer also tried to elicit sexual favors in exchange for the arrestee's release. Id.  Earlier in the day, the police officer told another woman

that women could get out of tickets if they offered their bodies to him. Id. The court reversed a jury verdict in favor of the plaintiff and remanded the case to the district court, holding that it could not be shown that the "Town acted or failed to act in such a way as to constitute deliberate indifference." Id. at 490. The Court stated that "[w]here the proper response . . . is obvious to all without training or supervision, then the failure to train or supervise is generally not 'so likely' to produce a wrong decision as to support an inference of deliberate indifference by city policymakers to the need to train or supervise." Id. (citing Walker v. City of New York, 974 F.2d 293, 299-300 (2nd Cir. 1992). The Eleventh Circuit also stated that "obviously, the Town has no policy commanding its officers to barter arrests for sexual favors. Likewise, the Town has no custom of allowing such behavior on the part of its officers."  Id. at 489.

In the present case, it is obvious that the City of Montgomery does not have a policy or a custom allowing its officers to engage in sexual misconduct. To argue such would be absurd. Under the summary judgment standard and affording all favorable inferences to Plaintiff's contention that the sexual interaction between herself and Marcus Williams was nonconsensual, Williams violated an obvious right when he forced Plaintiff to engage in said sexual acts.  No amount of training could have prevented his actions.  Williams knew that nonconsensual rape and sodomy was clearly wrong, yet he engaged in the alleged misconduct anyway. Because Williams violated an obvious right, deliberate indifference by either Chief Finley or Capt. Gaskin or the City cannot be demonstrated, and Plaintiff's claims against them are due to be dismissed.

**CONCLUSION**

Plaintiff has not established facts sufficient to establish a policy or custom of the City which resulted in the violation of her rights.  She has not established facts sufficient to establish the requisite causal connection between Chief Finely or Capt. Gaskin. Furthermore, Chief Finely and Capt. Gaskin have established that they are entitled to qualified immunity on Plaintiff's federal law claims.  Defendants are entitled to summary judgment on all claims.

Respectfully submitted this the 8th day of May, 2019.

/s/ Christopher R. East
Christopher Ryan East (EAS011)
ASB-2206-S82E
ceast@montgomeryal.gov

OF COUNSEL:
City of Montgomery
City Attorney's Office
PO Box 1111
Montgomery, Alabama, 36101
(334) 625-2050
(334) 625-2310 facsimile

**CERTIFICATE OF SERVICE**

I hereby certify that foregoing has been served upon the following by electronic filing or by U. S. Mail, postage prepaid on this 8th day of May, 2019:

Ms. Alicia K. Haynes, Esq.
Ms. Sonya C. Edwards, Esq.
Haynes and Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226
(205) 879-0377- Phone
akhaynes@haynes-haynes.com
scedwards@haynes-haynes.com

Mr. Morris Leon Williams, Jr.
3930 Water Drive
#3937
Millbrook, Alabama 36054

/s/ Christopher R. East
Of counsel