IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| K.J.C., by and through her Guardian and Next Friend, ANN PETTAWAY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 2:17-cv-91-ALB |
| CITY OF MONTGOMERY, ERNEST N. FINLEY, JR., W.B. GASKIN, and MORRIS LEON WILLIAMS, JR., | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants City of Montgomery, Ernest N. Finley, Jr., and W.B. Gaskin's (collectively, "the City") Motion for Summary Judgment, (Doc. 48), and on Plaintiff K.J.C.'s Motion to Stay/Defer Consideration of Defendants' Motion for Summary Judgment and Extend the Discovery Deadline, (Doc. 54). Because K.J.C. did not oppose the Defendants' motion for summary judgment, the Court independently investigated the record to address the merits of the motion. Upon consideration, K.J.C.'s motion is DENIED and the City's motion is GRANTED. This case is also set for a hearing on K.J.C.'s anticipated motion for default against Defendant Morris Williams.

# BACKGROUND

This case began with K.J.C.'s 911 call to report a missing medical device. An on-duty officer, Defendant Morris Williams, responded to the call and spoke with K.J.C. and her husband about the missing medical device until K.J.C.'s husband left for work. When K.J.C.'s husband returned later that night, K.J.C. told him that Williams had raped her. Together, they went to the hospital and then the family justice center, where it was determined she had been sexually assaulted and sodomized, suffering trauma to her anal area.

Once K.J.C. was at the hospital, the Montgomery Police Department was advised of the situation. Similar to situations involving other officer misconduct such as fleeing a crash scene or officer-involved shootings, the City placed the officer on administrative leave and ordered an investigation. (Doc. 1-4 at 2, 6; Doc. 48-1). This investigation fell on Officer S.B. Edwards, who was also the officer who responded to the hospital and then interviewed K.J.C., K.J.C.'s husband, and Williams. (Doc. 48-2 at 9).

As part of a criminal inquiry into Williams, Edwards testified under oath at a probable cause hearing. Edwards recounted her conversation with K.J.C. at the hospital.[1] Williams responded to K.J.C.'s 911 call at approximately 1:00 pm. (Doc.

---

[1] This record of the incident comes from the investigation report and testimony of one of the investigating officers from a probable cause hearing. (Doc. 15-3; Doc. 48-2). The City provided

15-3 at 3). When K.J.C.'s husband returned about 11:00 pm, they decided to call K.J.C.'s mom who told them to report the assault and seek medical treatment. (Doc. 15-3 at 3). The hospital staff checked K.J.C.'s vitals but did not perform a rape exam. (Doc. 15-3 at 3). Then at the family justice center, officials made a preliminary finding that K.J.C. had suffered "trauma to the anal area." (Doc. 15-3 at 3).

From speaking with K.J.C., Edwards determined that she had an intellectual impairment, in part because Edwards would have to "reword" her questions for K.J.C. to understand them. (Doc. 15-3 at 3, 8). Neither K.J.C. nor her husband nor her family could identify K.J.C.'s intellectual disability. K.J.C. testified that she is just "a little slow," and her family said that she operates at the level of a 12-year-old. (Doc. 15-3 at 4, 9). Edwards made further observations about K.J.C.'s intellectual abilities relevant to her ability to consent: she believed K.J.C. was the leaseholder for her apartment and that K.J.C. may have a driver's license. (Doc. 15-3 at 4). However, the judge prevented Edwards from answering further questions about whether K.J.C. and her husband were able to consent to sexual relations as a married couple because it was outside the scope of the probable cause hearing and counsel had not provided notice of the question. (Doc. 15-3 at 5).

---

the investigation report, and K.J.C. provided the testimony. Both largely agree with K.J.C.'s allegations in her amended complaint. (Doc. 15).

There were differences between K.J.C.'s and Williams' versions of the incident. Williams claimed that he engaged in consensual intercourse with K.J.C., and Williams claimed K.J.C. gave him a condom that she took from a brown paper bag in her house. (Doc. 15-3 at 4, 8). K.J.C. denied Williams' version of events and told Edwards that Williams brought a condom to the encounter. (Doc. 15-3 at 7-8). But, when Edwards went to K.J.C.'s apartment as part of her investigation, she found a brown bag full of condoms, "the exact same bag that [Williams] described … in a dresser drawer; hidden under some clothes." (Doc. 15-3 at 8).

Based on the investigation, the State filed a second-degree felony sodomy charge against Williams for engaging in "sexual intercourse with a person who is incapable of consent by reason of being mentally defective." Ala. Code § 13A-6-64. After a hearing, the judge found probable cause to send the case to a grand jury (Doc. 15-3 at 9). But the grand jury no-billed. (Doc. 48-2 at 22).

Although the criminal case ended, K.J.C. pursued this civil case against Williams; the City; Ernest N. Finley, Jr., Chief of the Montgomery Police Department; and W.B. Gaskin, Bureau Commander of the Training and Recruiting Division of the Montgomery Police Department.

The Court entered a scheduling order that gave the parties approximately one year to conduct discovery until April 4, 2019. (Doc. 35).

Nothing much happened in the case during the discovery period. Williams did not appear in the case to defend himself. The other parties sent each other a series of emails about various discovery disagreements and misunderstandings. The City did not include in its initial disclosures Williams' criminal case file, the indictment documents, or the rape kit results. (Doc. 55-1). But K.J.C. obtained these materials two weeks before the close of discovery. (Doc. 54 at 6). The City acknowledges that its response to K.J.C.'s interrogatories was delayed, but claims that it was part of a misunderstanding, not malicious. (Doc. 55 at 3–4). And K.J.C. did not follow up on the missing answers until three and a half months after asking the questions. (Doc. 55 at 4).

On March 20, 2019, lawyers for the City emailed K.J.C.'s lawyer, Alicia Haynes, to ask for possible dates to depose K.J.C. and her guardian by the discovery deadline, April 8. (Doc. 54 at 39). Haynes responded, "Really, this is laughable. Do you actually believe that in the next two weeks I have any time, much less 'several dates' available for depositions? 1st available is July." (Doc. 54 at 38). The City's counsel responded, "so glad I could give you a good laugh. I'm preparing a motion to extend the discovery deadline to August 1, 2019 based on your assertion that you have no availability until July. Can I state in the motion you have no objection?" (Doc. 54 at 37). Haynes responded, "I assume your motion is not based on my limited availability when you are first asking for deposition dates two weeks prior

to the cut-off? I need to see your motion before I sign on. If worded that we both have conflicts I would be agreeable to a joint motion." The City ultimately decided not to file a motion to extend the discovery deadline or otherwise take the depositions it had requested.

Because Williams did not make an appearance to defend himself, K.J.C. filed a motion for default shortly before the discovery period ended, and the Clerk later entered default against him. (*See* Doc. 45; Doc. 50; Doc. 57).

At the close of discovery, as established by the scheduling order, the City filed a motion for summary judgment.

Approximately one month later, K.J.C. filed a motion to reopen discovery as an answer to the City's motion for summary judgment.

## STANDARD

The court will grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). The moving party need not produce evidence disproving the opponent's claim; instead, the moving party must demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In turn, the nonmoving party must go beyond mere allegations to offer specific facts showing a genuine issue for trial exists. *Id.* at 324. When no genuine issue of material fact exists, the court

determines whether the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it …." Fed. R. Civ. P. 56(e). The Court cannot enter summary judgment based solely on a motion being unopposed; rather, the Court must consider the motion's merits. *United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). In doing so, the Court need not review the entire record. *Id.* The Court must merely verify that the motion is supported by evidentiary materials and then review those materials. *Id.* at 1101–02.

## DISCUSSION

The issues presented are (1) whether K.J.C. should be allowed to reopen discovery, (2) whether the City met its burden to support summary judgment, and (3) how the Court should resolve the Clerk's entry of default against Williams.

The City argues that it is entitled to summary judgment because the City's own policy, custom, or failure-to-train did not lead to Williams' conduct. In response to the City's motion for summary judgment, K.J.C. argues that she was not able to perform necessary discovery and that the City tricked her counsel by not filing a

motion to extend the discovery deadlines. The City counters that K.J.C.'s counsel procrastinated discovery until the City asked about setting up its own depositions and then asked the City to mislead the Court in a motion that said the City had conflicts requiring a discovery extension. The City also responds that (1) K.J.C. is asking to take discovery about only marginally relevant issues, and (2) K.J.C.'s own lack of diligence is to blame for not obtaining the desired discovery.

## I. K.J.C.'s Motion Is Denied, Whether It is Construed as a Rule 56(d) Motion or a Motion to Extend Discovery Deadlines

As an initial matter, the Court will evaluate K.J.C.'s Motion to Stay/Defer Consideration of Defendants' Motion for Summary Judgment and Extend the Discovery Deadline. (Doc. 54). To qualify for Rule 56(d) relief, K.J.C. would need to assert specific facts that could be produced through additional discovery. K.J.C.'s motion could also be construed as a Rule 16(b)(4) motion to extend discovery deadlines, which would require K.J.C. to show good cause to support amending the scheduling order. K.J.C. does not meet her burden under either rule.

K.J.C. argues that the City withheld documents identified in its initial disclosures including Williams' criminal case file, indictment documents, and rape kit results until two weeks before the discovery deadline; delayed producing responses to her interrogatories for six months; and misled her counsel about filing a motion to extend the discovery deadlines. The City responds that it did not include

these documents in its initial disclosures because the documents had no bearing on K.J.C.'s claims against the City. The City acknowledges that its response to K.J.C.'s interrogatories was delayed but notes that K.J.C. did not diligently seek them because she did not mention them until three and a half months after propounding the questions. And the City did not file its proposed motion because Haynes said she would only approve the motion if the City claimed it also had conflicts requiring a discovery extension. Rather than file a motion to extend the discovery deadline on these conditions, the City dropped its request for depositions.

K.J.C. argues that she needs to depose Finley and Gaskin. She also argues that she was the first party to offer an available date for depositions but omits two key facts: first, K.J.C. did not request depositions until barely a month of discovery remained, despite carrying the burden of proof; and second, K.J.C. only requested depositions and offered these dates after the City asked when it could depose K.J.C. and her guardian.

## A. Rule 56(d) Motion to Defer Summary Judgment

A party may "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition …." Fed. R. Civ. P. 56(d). "To invoke this Rule, a party 'may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts,' but 'must specifically demonstrate how postponement of a ruling on the motion will enable him, by

discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1287 (11th Cir. 2019) (per curiam) (quoting *Reflectone, Inc. v. Farrand Optical Co., Inc.*, 862 F.2d 841, 843 (11th Cir. 1989)).

The Court has discretion to grant or deny a Rule 56(d) motion. *Smedley v. Deutsche Bank Trust Co. Ams.*, 676 F. App'x 860, 862 (11th Cir. 2017). If the Court finds that the plaintiff failed to meet the requirements of Rule 56(d), summary judgment "may be appropriate," even where no discovery has been held. *Id.* (citing *Reflectone, Inc.*, 862 F.2d at 843). "Additionally, a party will not be entitled to conduct further discovery under Rule 56(d) where the absence of evidence essential to that party's case is the result of that party's lack of diligence in pursuing such evidence through permitted methods of discovery." *Cordero v. Readiness Management Support, L.C.*, 2012 WL 3744513, at *3 (M.D. Fla. Aug. 29, 2012) (quoting *Barfield v. Brierton,* 883 F.2d 923, 932 (11th Cir. 1989)); *see also City of Miami Gardens*, 931 F.3d at 1286 (noting that summary judgment may be granted after party opposing summary judgment "has had an adequate opportunity for discovery"). A Rule 56(d) motion will not be granted where the party "had ample time and opportunity for discovery, yet failed to diligently pursue his options." *Barfield*, 883 F.2d at 932.

Here, K.J.C. argues that she needs to depose Finley and Gaskin to determine if they were aware of "excessive force routinely used by their officers and the unlawful conduct for which at least twenty-one … Montgomery Police Officers were arrested." K.J.C. also claims she needs to depose Finley and Gaskin because they allegedly failed to train or prevent the City's officers from engaging in misconduct and because K.J.C. needs to know their exact policies and training procedures. (Doc. 54 at 14). These are topics for a deposition, not the kind of specific facts that are required to delay summary judgment under Rule 56(d).  Moreover, K.J.C. wants to depose Finley and Gaskin about misconduct that is dissimilar to Williams' misconduct. This is not a lawsuit about a police officer who used excessive force on a suspect; it is a lawsuit about a police officer who allegedly raped a woman he was supposed to help. Evidence of such dissimilar misconduct would not help K.J.C. prove her substantive case, as explained in Section II below.

Perhaps more importantly, even if K.J.C. could identify specific, relevant facts that she would obtain by deposing Finley and Gaskin, the blame for failing to depose them earlier rests squarely on her own shoulders. K.J.C. had adequate time and opportunity to depose them, yet she failed to diligently pursue her options, waiting for other marginally relevant discovery issues to be resolved while never mentioning the need to depose the supervising officers. A reasonably diligent party or attorney would have moved forward during the year-long discovery period, rather than

sleeping on her rights until the discovery period had passed. *See Cash v. State Farm Fire & Cas. Co.*, 125 F. Supp. 2d 474, 477 (M.D. Ala. 2000). The Court will not countenance litigious lollygagging—parties delay depositions until after the discovery period at their own risk.[2] The law provides K.J.C. the opportunity to conduct discovery; it does not afford relief when the opportunity is squandered.

## B. Rule 16(b)(4) Motion to Extend Discovery Deadlines

The Court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). And the Court has "broad discretion … to compel or deny discovery …." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). In deciding whether to grant a motion to amend, the Court is "under no obligation" to extend a discovery deadline; in fact, the Eleventh Circuit has "often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion." *Id.* at 1307.

For much the same reasons as the Court denies the Rule 56(d) Motion—lack of diligence and not showing specific, relevant, discoverable facts—the Court also finds that K.J.C. has not shown good cause to amend the scheduling order. When the

---

[2] The Court also believes that K.J.C.'s actions may have been strategic. K.J.C.'s counsel is an experienced trial lawyer. She may have avoided extensive and expensive discovery on her claim against the City because there are underlying factual problems with K.J.C.'s case. For example, during the criminal investigation, there were conflicting accounts about K.J.C.'s ability to consent and whether she had consented. Presumably, these disparities are what caused the grand jury to return a no-bill when it was asked to indict Williams. Digging into these issues during discovery could have undermined K.J.C.'s explanation of events or prompted Williams to appear to defend himself. A good lawyer may well have decided that the game was not worth the candle.

Court issued the order, K.J.C. had almost an entire year to conduct discovery. (Doc. 35 at 2). Despite Gaskin and Finley being parties to this case from the beginning, K.J.C. made no effort to depose them until prompted by the City's request to take K.J.C's deposition.

Nor can K.J.C. rely on the City's failure to file a motion to extend the discovery period as good cause. K.J.C.'s lawyer, Alicia Haynes, did not agree to the motion. Instead, she would only join the motion after she had reviewed a draft and if the City told the Court that *its attorneys* had conflicts requiring an extension. The City was well within its rights to drop its request to conduct K.J.C's deposition instead of moving to extend the discovery period.

K.J.C.'s excuses do not show good cause. The Court recognizes that Haynes, like most attorneys, is busy. But so is everyone else. That is why scheduling orders and deadlines are so important. The scheduling order was clear, and the Court will hold K.J.C. to its terms.

## II. The City Met Its Burden for An Unopposed Summary Judgment

Apart from the motion to stay and to extend discovery, K.J.C. did not respond to the City's motion for summary judgment. Because the Court has denied K.J.C.'s motion, the Court will treat the City's motion for summary judgment as unopposed. As the Eleventh Circuit requires in these circumstances, the Court "indicate[s] that the merits of the motion were addressed." *One Piece of Real Property*, 363 F.3d at

1102. The Court reviewed the City's motion for summary judgment and accompanying evidence as well as K.J.C.'s original and amended complaint and their accompanying evidence. After finishing this review, the Court finds that the City has provided ample evidence to support summary judgment.

Turning to the heart of K.J.C.'s suit against the City, K.J.C. alleges that the City should be liable for Williams' conduct under §1983. To distinguish the acts of a municipality from the acts of an employee in a §1983 suit, the plaintiff must show that the municipality's policy, custom, or failure to train caused a constitutional injury. Otherwise, the municipality enjoys immunity from §1983 suits. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). This standard prevents municipal liability from devolving into respondeat superior. *Id.* at 663 n.7. First, a policy is "a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). Often, a municipality's offensive policy will manifest itself as a custom or a failure to train rather than an express policy facilitating misconduct. Second, a custom is "a practice that is so settled and permanent that it takes on the force of law." *Id.* Third, failure-to-train liability is comparatively rarer, only applying in "limited circumstances" and "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality …." *City of Canton v. Harris*, 489 U.S. 378, 387, 389 (1989).

This "deliberate indifference" will usually exist only where a pattern of similar constitutional violations puts a municipality on notice of its inadequate training. In rare circumstances, however, a single incident may justify overriding a municipality's immunity. *Davis v. City of Montgomery*, 220 F. Supp. 3d 1275, 1284 (M.D. Ala. 2016) (quoting *Bd of Cty Comm'rs v. Brown*, 520 U.S. 397, 409 (1997)) ("[I]n a narrow range of circumstances a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations."). This single-incident liability turns on "(1) the likelihood that a police officer will be confronted with a specific situation and (2) the predictability that an officer, when confronted with that situation, will violate a person's constitutional rights." *Id.*

Here, there is no evidence that the City has either an express policy or a custom to turn a blind eye to officers sexually assaulting citizens. *See Sewell*, 117 F.3d at 489 ("Obviously, the Town has no policy commanding its officers to barter arrests for sexual favors. Likewise, the Town has no custom of allowing such behavior on the part of its officers"). In fact, the evidence shows the opposite: it violates the City's Workplace Rules of Conduct for an officer to be arrested for any offense. (Doc. 48-2 at 4). Once Williams was arrested, the police department investigated him, but he resigned before termination proceedings could be completed.

Nor is there evidence that the City's alleged failure to train made it highly predictable that the City's officers would sexually assault citizens. *See Davis*, 220 F. Supp. 3d at 1285. First, there is no evidence showing a history of constitutional violations against persons with mental disabilities such that the need for training would have been so obvious to the City that a failure to train amounted to deliberate indifference towards the constitutional rights of such persons. In fact, the City provided training on sexual harassment, stress management, handling the emotionally disturbed, and rape awareness. (Doc. 48-3 at 3–5). And Williams acknowledged he had received training on sexual harassment. (Doc. 48-3 at 2). In response, K.J.C. has alleged that other Montgomery police officers have been subject to various complaints about their behavior. K.J.C. attached news reports of two specific incidents: an off-duty officer charged with fleeing the scene of an accident and an on-duty officer charged with excessive force amounting to murder. (Doc. 1-4 at 2–3, 5). But these incidents do not show a pattern of constitutional violations like the one in this case.

Second, Williams' conduct is not the type that is contemplated by single-incident liability. While it is likely that an officer might be alone with an intellectually disabled person, it is in no way predictable that an officer, when confronted with that situation, would abdicate the trust placed in him by the public and violate someone's constitutional rights so egregiously. The evidence presented,

and Williams' silence, indicate that Williams acted independently in committing a constitutional tort. *See Brown*, 520 U.S. at 403 (recognizing "that a municipality may not be held liable under §1983 solely because it employs a tortfeasor"). Any officer, including Williams, should know not to engage in sexual relations while on duty with a person whom they have been called to assist. To say nothing of sexually assaulting an intellectually disabled person who cannot consent to sexual relations in the first place. No City policy or training could have anticipated and prevented this kind of egregious act.

After evaluating the merits of the City's motion for summary judgment and affording all favorable inferences to K.J.C., the Court cannot find substantial evidence that the municipality's policy, custom, or failure to train caused a constitutional injury. Absent such evidence, the City is immune from K.J.C.'s §1983 claim, and the City's motion for summary judgment is due to be granted.

### III. Judgment Against Williams

The City and Officers Gaskin and Finley defended themselves in this case; Williams did not. K.J.C. alleges that Williams violated her constitutional rights, specifically her right to due process and equal protection protected by the Fourteenth Amendment and her right to be safe from unreasonable search and seizure protected by the Fourth Amendment. She also alleges that Williams committed state tort

violations against her. Because Williams did not make an appearance, the Clerk entered default against him.

Now that default has been entered under Rule 55(a), K.J.C. may file a motion for default judgment under Rule 55(b)(2). The Court's decision to grant default judgment is discretionary, and the Court must use that discretion to avoid inconsistent judgments. Inconsistent judgments will not be a problem in this case. Holding Williams liable—but not the City or Officers Gaskin and Finley—would not create a contradictory result. The Court has held that the City and the supervising officers are not vicariously liable for Williams' actions. But just because the City and supervising officers are not liable does not take Williams off the hook.

Once a party defaults, the Court may enter default judgment; however, a default judgment is a "drastic remedy which should be used only in extreme situations." *Garrett v. U.S. Marshals Serv.*, 2018 WL 1100896, at *2 (M.D. Ala. Feb. 5, 2018) (quoting *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985)). To grant a default judgment, the court must determine whether the factual allegations are plausible and if so, what is the proper remedy. Merely failing to defend does not justify a recovery. "[A] defendant's default alone does not warrant entry of a default judgment." *UBS Fin. Services, Inc. v. Reeves*, 2018 WL 3240957, at *1 (M.D. Ala. July 3, 2018). "[A] default is not 'an absolute confession by the defendant of his liability and of the plaintiff's right to recover,' but is instead merely 'an admission

of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability'" *Id.* (quoting *Natures Way Marine, LLC v. N. Am. Materials, Inc.*, 2008 WL 801702, at *2 (S.D. Ala. Mar. 24, 2008) (citations omitted)).

There must be a sufficient basis in the pleadings for the judgment requested. In other words, the party must still state a claim for relief. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted) ("[A] default judgment cannot stand on a complaint that fails to state a claim"). The court must assure itself that there is a "sufficient basis in the pleadings for the judgment entered." *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The Eleventh Circuit has decided that this standard is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). So, all well-plead factual allegations, but not legal conclusions, are deemed admitted. *Id.* (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 126, 1278 (11th Cir. 2005)). Then, if the Court determines that the admitted factual allegations state a legal claim, the Court turns to the issue of damages. *Thompson v. Freedom Patrol*, 2009 WL 2525291, at *1 (M.D. Ala. Aug. 17, 2009) (citing *Chudasama*, 123 F.3d at 1364 n.27).

If K.J.C. decides to move for default judgment, she needs to file a Motion for Default Judgment with the court, showing why she is entitled to default judgment by pointing to well-pled factual allegations from her amended complaint. K.J.C. must then prove her damages. Judge Watkins offered a helpful sports analogy to clarify the differences between a default judgment on the merits and a damages hearing:

> an uncontested default judgment hearing on plausibility might be thought of as a free throw shot in basketball—the net is unguarded, but the shooter still has to get the ball in the hoop (i.e., the facts must still be plausible). The damages hearing, however, might be more akin to soccer's penalty kick: there's a goalie (judge) ensuring the plaintiff can prove damages.

*USAmeriBank v. Strength*, 2017 WL 4767694, at *7 (M.D. Ala. Oct. 20, 2017). So, at the potential damages hearing, the Court will receive evidence and hear testimony to determine the proper measure of K.J.C.'s damages, if any, for the claims she has brought against Williams.

## CONCLUSION

Based on the above reasoning, the Court orders as follows:

1. Defendants' Motion for Summary Judgment (Doc. 48) is **GRANTED**.

2. Plaintiff's Motion to Defer the Motion for Summary Judgment and Extension of Time to Complete Discovery (Doc. 54) is **DENIED**.

3. The trial and pre-trial conference in this matter are **CANCELLED**.

4. In light of the Clerk's entry of default against Defendant Williams (Doc. 57), Plaintiff may file a motion for default judgment as explained in this opinion. If she chooses to pursue default against Williams, Plaintiff is **DIRECTED** to file her motion for default judgment **on or before November 15, 2019**.

5. A nonjury evidentiary hearing is set for **November 22, 2019 at 8:30am** in Courtroom 2E at which the Court will hear evidence, if any, on Plaintiff's anticipated motion for entry of a default judgment and compensatory and punitive damages. *See* Fed. R. Civ. P. 55(b)(2); 10A Fed. Prac. & Proc. Civ. § 2688 (4th ed. 2019). If Plaintiff wants the Court to consider any documentary evidence, that evidence should be filed either under seal or through the ECF system before the evidentiary hearing. If any Defendant wants to present evidence at the hearing, they should notify Plaintiff and the Court **on or before November 19, 2019**. The Court anticipates that the hearing will take approximately one hour. The parties should inform the Court by calling chambers if the hearing needs to be longer.

6. This case is not closed.

**DONE** and **ORDERED** this 7th day of October 2019.

<div align="center" style="margin-left:40%">

_____/s/ Andrew L. Brasher_____
ANDREW L. BRASHER
UNITED STATES DISTRICT JUDGE

</div>