# IN THE UNITED STATES DISTRICT COURT FOR
# THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| K.J.C., by and through her Guardian and Next Friend, ANN PETTAWAY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 2:17-cv-91-ALB ) |
| CITY OF MONTGOMERY, ERNEST N. FINLEY, JR., W.B. GASKIN, and MORRIS LEON WILLIAMS, JR., | ) ) ) ) ) |
| Defendants. | ) |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the court on Plaintiff K.J.C.'s Motion for Default Judgment Against Defendant Morris Leon Williams, Jr. (Doc. 65). Williams, then a police officer, answered a call to help Plaintiff K.J.C., but instead he sexually assaulted her in her own apartment. When K.J.C. filed suit against him, Williams failed to defend himself, so the Clerk entered default. Now K.J.C. moves for default judgment. Upon consideration, K.J.C.'s motion is GRANTED.

## **BACKGROUND**

At an evidentiary hearing held on December 18, 2019, K.J.C. recounted Williams' attack on her. K.J.C., a woman with an intellectual disability, called 911 to report a missing medical device. An on-duty officer, Defendant Morris Williams,

responded to the call and spoke with K.J.C. and her husband about the missing medical device. Williams told K.J.C.'s husband she "would be in good hands," so he left for work. Williams then proceeded to ask K.J.C. about her sex life with her husband. Williams showed K.J.C. photos of his penis before exposing himself to her. He asked her to touch him, but she told him "no." Wearing his police uniform, including his weapon, Williams instructed K.J.C. to take her clothes off. She complied, and Williams took her to her bedroom where he anally raped her. K.J.C. told him he was hurting her and told him to stop. When Williams had finished, he made K.J.C. promise not to tell anyone. He then left her home and disposed of the condom he had used to rape K.J.C. at his fiancée's house. When K.J.C.'s husband returned later that night, K.J.C. told him that Williams had raped her. Together, they went to the hospital and then the family justice center, where it was determined she had been sexually assaulted and sodomized, suffering trauma to her anal area.

The damages caused by Williams' attack were also established at the evidentiary hearing. After hearing testimony and receiving evidence, the Court makes the following factual findings as they pertain to damages:

From K.J.C.'s testimony, it is clear that this is a case of forcible rape. K.J.C. testified that she told Williams, "no," and she did not consent. Based on her demeanor and appearance, she is clearly intellectually disabled. Anyone who interacted with her would know that she is intellectually disabled. And Williams did,

in fact, know that she was intellectually disabled at the time of the rape. Her testimony is credible that she feels intense shame and distress from the rape, even years later. She also mistrusts police, fears being alone, cannot live with or otherwise be with her husband, and has difficulty relating to her family and others. She moved to a different state because of her fear of Williams and suffers intense stress whenever she returns to Montgomery because she fears that she might see him.

These factual findings are strengthened by the testimony of K.J.C.'s aunt and grandmother.

Valencia Michelle Aaron, K.J.C.'s aunt, testified that K.J.C. was diagnosed between the ages of two and three with "severe mental retardation." Aaron described K.J.C. since the attack as being "tearful," "embarrassed," "terrified," and "afraid" that "some[one] could come back and hurt her." After the attack, K.J.C. "moved immediately" out of the apartment, which was a special apartment with an on-site nurse to care for the intellectually disabled. K.J.C. experiences "panic attacks" and has become "withdrawn" and "shameful," avoiding interaction with her family. Although K.J.C. is still married to her husband, they no longer live together because of the terror she experiences when he leaves for work. K.J.C. remembers her trauma every time she sees a police officer, which leaves her "terrified." K.J.C. has biweekly counseling because of the rape. In Aaron's opinion, K.J.C. "will never be the same."

Ann Pettaway, K.J.C.'s grandmother and former guardian, testified that Williams' attack has left her granddaughter feeling "worthless." K.J.C. has recurring nightmares about Williams. In the wake of Williams' attack, K.J.C. has been suicidal, cutting herself and attempting to overdose on pills. K.J.C. must be watched around-the-clock. Pettaway testified that her granddaughter "has not been the same" since the attack and continues to need mental health counseling.

## DISCUSSION

K.J.C. alleges that Williams violated her constitutional rights, specifically her right to due process and equal protection protected by the Fourteenth Amendment and her right to be safe from unreasonable search and seizure protected by the Fourth Amendment. She also alleges that Williams committed state torts, including assault and battery and invasion of privacy. Because Williams did not make an appearance, the Clerk entered default against him. K.J.C. then filed a motion for default judgment, requesting $1,000,000 in compensatory and punitive damages and attorneys' fees.[1] (Doc. 65).

---

[1] K.J.C. also requests prejudgment interest, but neither state nor federal law provides prejudgment interest for unliquidated damages of the kind she suffered. *E.g. United States Fidelity & Guar. Co. v. German Auto, Inc.*, 591 So.2d 841, 843 (Ala. 1991); *ATM Exp., Inc. v. Montgomery*, 516 F. Supp. 2d 1242, 1253 (M.D. Ala. 2007).

## A. K.J.C. Has Met the Default Judgment Standard Against Williams

Default judgment is appropriate where the plaintiff has stated a claim for relief. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citations omitted) ("[A] default judgment cannot stand on a complaint that fails to state a claim"). The Eleventh Circuit has held that this standard is "akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015). So, all well-plead factual allegations, but not legal conclusions, are deemed admitted. *Id.* (quoting *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 126, 1278 (11th Cir. 2005)). Then, if the Court determines that the admitted factual allegations state a legal claim, the Court turns to the issue of damages. *Thompson v. Freedom Patrol*, 2009 WL 2525291, at *1 (M.D. Ala. Aug. 17, 2009) (citing *Chudasama*, 123 F.3d at 1364 n.27).

K.J.C. has stated state-law claims for battery, invasion of privacy, and outrage. She also has brought a federal claim under Section 1983. She has also offered evidence in support of these claims.

To succeed on a battery claim, a plaintiff must prove: (1) the defendant touched the plaintiff; (2) the touching was intentional; and (3) the touching was conducted in a harmful or offensive manner. *Ex parte Atmore Community Hosp.*, 719 So. 2d 1190, 1194. Here, there is evidence that Williams repeatedly touched

K.J.C. in a sexual and degrading manner. K.J.C. told him to stop and that he was hurting her. Despite K.J.C.'s pleas, Williams continued to assault her. The evidence K.J.C. provided demonstrates this touching was intentional, harmful, and offensive.

To succeed on an invasion of privacy claim relating to sexual harassment, a plaintiff must show: (1) the matters intruded into are of a private nature; and (2) the intrusion was so offensive or objectionable that a reasonable person subjected to it would experience outrage, mental suffering, shame, or humiliation. *Ex parte Atmore Community Hosp.*, 719 So.2d 1190, 1194; *see Busby v. Truswal Sys. Corp.*, 551 So.2d 322, 323 (Ala. 1989) (not finding invasion of privacy for asking coworker for date and making sexual proposition); *Phillips v. Smalley Maint. Servs.*, 435 So.2d 705, 709 (Ala. 1983) (finding invasion of privacy for extensive inquiries into person's sex life or looking up person's skirt). Here, the evidence establishes that Williams intruded into K.J.C.'s sexual relationship with her husband, making extensive inquiries into extremely private and personal matters. Williams' intrusion went beyond inquiries into acts, telling K.J.C. to remove her clothes, then raping her. His words and conduct were so offensive and objectionable that a reasonable person would experience outrage, mental suffering, shame, and humiliation.

A claim for outrage, sometimes referred to as intentional infliction of severe emotional distress, requires showing (1) a defendant intended to inflict emotional distress, or knew or should have known that his or her conduct would likely result

6

in emotional distress; (2) the conduct was extreme and outrageous; and (3) the resulting emotional distress was so severe that no reasonable person could be expected to endure it. *Callens v. Jefferson Cty. Nursing Home*, 769 So.2d 273, 281 (Ala. 2000). Alabama recognizes the tort of outrage in only a few areas, one of them being egregious sexual harassment. *Id.* Here, the evidence establishes that Williams knew or should have known that severe emotional distress would likely result from sexually assaulting a woman with an intellectual disability. His conduct, extreme and outrageous in itself, was magnified by his position of trust as a police officer. K.J.C.'s resulting emotional distress was more severe than any reasonable person could be expected to endure.

Section 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege "(1) that the defendant deprived [the plaintiff] of a right secured under the Constitution or federal law and (2) that such deprivation occurred under color of state law." *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998). The Eleventh Circuit has recognized that under certain circumstances, a rape of a person by a state officer can violate the Constitution and serve as the basis for a suit under § 1983. *Compare Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001) (city manager acted under color of state law when he used his position to

be alone with rape victim) *with Almand v. DeKalb County*, 103 F.3d 1510, 1513 (11th Cir.), *cert. denied*, 522 U.S. 966 (1997) (police officer was not acting under color of state law when he broke down rape victim's apartment door like any other criminal). Here, Williams secured access to K.J.C.'s home only because he was called there on police business, and he used his authority as a police officer to rape her. K.J.C. has stated a claim under federal law.

### B. The Court Awards K.J.C. $500,000 in Compensatory Damages and $500,000 in Punitive Damages.

K.J.C. requests $1,000,000 in compensatory and punitive damages. As detailed above, K.J.C. has submitted substantial evidence in support of that award. A tortfeasor takes his victim as he finds her. *Prescott v. Martin*, 331 So.2d 240, 244 (Ala. 1976) (noting that jury could award "all damages proximately resulting from defendants' negligence even if her injuries were of a more serious nature because of a pre-existing condition"). K.J.C. was, and is, uniquely vulnerable and has endured heightened pain and suffering because of her intellectual disability. Due to her unique circumstances, the Court could impose an even higher damages award, but the Court concludes that $500,000 in compensatory and $500,000 in punitive damages will suffice to compensate K.J.C. and punish Williams.

This figure falls squarely within what other courts have deemed appropriate for similar torts, even absent the aggravating circumstances of K.J.C.'s intellectual disability.

In *Doe v. HRH Prince Abdulaziz Bin Fahd Alsaud, Saudi Oger Ltd.*, the rapist's liability had already been determined on summary judgment. The Court awarded the plaintiff $1,250,000 in compensatory damages—$850,000 for past pain and suffering and $400,000 for future pain and suffering—and $1,000,000 in punitive damages. No. 13 CIV. 571, 2017 WL 4541426, at *1 (S.D.N.Y. Oct. 10, 2017).

In *Duncan v. Hampton Cty Sch. Dist. No. 2*, the court awarded $1,000,000 in actual damages to an intellectually disabled student who was sexually assaulted by another student while under the school district's supervision. 517 S.E.2d 449, 451 (S.C. Ct. App. 1999), *cert. denied*, (Sept. 24, 1999). The court found that the damages award was supported by evidence presented at a hearing. The court noted that the child "cried hysterically" when returned to school and still does when recalling details of the incident. *Id.* at 456. The child has also been "uncharacteristically withdrawn, sad, and disinterested in school." *Id.* Experts testified that the child had been traumatized by the event, and the child's depression had been augmented by the rapist's continued presence in his classroom, with likely future problems including loss of sense of safety and occurrence of flashbacks. *Id.*

In *M.L.E. v. K.B. ex rel. A.B.*, the court awarded a child $500,000 compensatory damages for physical injury and emotional distress against a stepfather who had sexually abused and raped her over a period of two years. 794

So. 2d 1143, 1145 (Ala. Civ. App. 2000). The stepfather had been prosecuted for sexual abuse and rape but was found guilty only of sexual abuse, which he was in the process of appealing. *Id.* at 1147. When the child brought civil suit, the stepfather did not appear to defend himself and defaulted. *Id.* at 1145. The abuse caused the child to become physically ill and nauseated from dread and fear. *Id.* at 1149. The child testified that the attacks were often physically painful and resulted in various injuries. *Id.* She also suffered from nightmares. *Id.*

These damages are also supported by treatises and other secondary sources. For example, in *American Jurisprudence*, the authors explain that emotional damages from rape are substantial:

> "[o]ne explanation for the severity of the emotional damage resulting from acquaintance rape is that every trust-based relationship the victim has developed in her life is called into question by the event. The woman who is assaulted by someone she knows typically feels vulnerable and unsure of her ability to gauge who is trustworthy and who is not in every aspect of her life. In some cases, a woman's ability to trust may be jeopardized for years following the assault."

Proof of Damages for Sexual Assault, 15 Am. Jur. Proof of Facts 3d 259 §3 Overcoming Societal Myths About Victims (Nov. 2019 supp.). The authors also note a vast range of compensable aspects of mental anguish and emotional distress:

> embarrassment, humiliation, feelings of vulnerability and powerlessness, shame, indignity, disgrace, and degradation. In addition, sexual assault victims have received damages for terror, ordeal, grief, fright, shock, nervousness, disgust, anxiety, apprehension, and worry, including the fear of pregnancy or venereal disease. Other aspects of compensation include sleep disturbances such as nightmares

or insomnia, as well as depression, neurosis, phobias, and other mental disorders. Recovery has also been permitted for irritability, personality changes, mood swings, the deterioration of personal relationships, and the inability to have sexual relations.

15 Am. Jur. Proof of Facts 3d 259 §8 Recovery for Psychological Harm—In General (Nov. 2019 supp.).

Tragically, K.J.C. expressed at the hearing that she feels that she and her husband are "disgraced" because of her experience. In the strongest possible terms, the Court advises K.J.C. that neither she nor her family has anything to be ashamed of. If anyone should be ashamed or disgraced, it is Williams. Awarding a $1,000,000 judgment against an individual is a weighty decision, and not one the Court takes lightly. Because this judgment is based on Williams' commission of a "willful and malicious injury," 11 U.S.C. § 523(a)(6), it is not dischargeable in bankruptcy and will likely follow him for the rest of his life. But K.J.C. has submitted evidence to establish that Williams committed a grave and serious offense. This substantial judgment reflects that fact.

## CONCLUSION

Based on the above reasoning, K.J.C.'s Motion for Default Judgment is GRANTED. K.J.C. is awarded $500,000 in compensatory damages and $500,000 in punitive damages. She is also entitled to attorneys' fees under 42 U.S.C. § 1988. A final judgment will be entered by separate order.

**DONE** and **ORDERED** this 8th day of January 2020.

                                        /s/ Andrew L. Brasher
                              ANDREW L. BRASHER
                              UNITED STATES DISTRICT JUDGE